José Hernández, demandante-apelado-apelante, v. Francisco
   Matanzo y Ramón Zeno Córdova, demandados-apelantes-
   apelados.

No. 3536.—*Visto:* Junio 3, 1925. *Resuelto:* Diciembre 9, 1925.

1. Arrendador y Arrendatario—Acción de Volver a Entrar en, y Recobrar
   la Posesión por el Propietario—Desahucio—Mandamiento de Desahucio
   y su Cumplimiento—Lanzamiento y su Alcance.—Cuando en acción de
   desahucio la sentencia decreta el desalojo del demandado sin ordenar la des-
   trucción de propiedad alguna, no puede cumplimentarse el mandamiento de
   ejecución destruyendo parte de la propiedad del demandado.

2. Arrendador y Arrendatario—Acción de Volver a Entrar en, y Recobrar
   la Posesión por el Propietario—Desahucio—Mandamiento de Desahucio
   y su Cumplimiento—Destrucción Arbitraria de Propiedad del Deman-
   dado y Efecto.—Si al ejecutar una sentencia de desahucio, arbitrariamente
   se destruye una casa del demandado radicada en parte en la finca objeto del
   desalojo, el demandado tiene derecho, en una acción de daños y resarcimiento
   de perjuicios, a ser indemnizado del valor de la casa de que se trata y de
   sus rentas.

Sentencia de *Charles E. Foote*, J. (Primer Distrito, San Juan),
   declarando con lugar la demanda, con costas. *Modificada y con-
   firmada.*

*Campillo & Campillo* y *M. Tous Soto*, abogados del demandante;
   *J. Martínez Dávila*, abogado de los demandados.

El Juez Presidente Señor del Toro, emitió la opinión del
   tribunal.

El 26 de agosto de 1924 la Corte de Distrito del Primer
Distrito de San Juan dictó sentencia en este caso conde-
nando al demandado a pagar al demandante ochocientos
dólares valor de cierta casa y los alquileres de la misma
desde el 7 de agosto hasta el 21 de diciembre de 1922, fecha
de la interposición de la demanda, a razón de treinta y cua-
tro dólares mensuales. más las costas.

Ambas partes apelaron. La demandada pide que se re-
voque la sentencia y se desestime la demanda. La deman-
dante que se adicione concediéndole además los alquileres
desde el 21 de diciembre de 1922 hasta el día en que se pa-
gue el valor de la casa.

Examinaremos y decidiremos primero el recurso del de-
mandado. Se basa en cinco errores que se señalan así:

1. Erró la corte sentenciadora al declarar probado que no existe sentencia en el caso de desahucio seguido por el demandado Matanzo contra el demandante Hernández.

2. Erró la corte sentenciadora al declarar probado que el márshal de la corte municipal donde se tramitó el dicho pleito de desahucio no recibió mandamiento alguno para la ejecución de la sentencia dictada en el mismo.

3. Erró la corte sentenciadora al declarar que el demandante tiene derecho a ser indemnizado por el demandado del valor de la casa de que se trata y de sus rentas.

4. Erró la corte sentenciadora al fijar el valor de la casa en cuestión, y

5. Erró la corte sentenciadora al condenar al demandado a indemnizar el valor de toda la casa.

[1] Según demuestran las pruebas en la Corte Municipal de San Juan, Sección Primera, se presentó por el Doctor Francisco Matanzo contra José Hernández una demanda de desahucio pidiendo ''el inmediato desalojo al demandado de la finca de la propiedad del demandante.'' Se alega en ella que el demandante es dueño de cierta finca de la que dió en arrendamiento al demandado un solar,—que se describe solamente diciendo que colinda por todos sus lados con la finca del demandante,— por el canon mensual de dos dólares y cincuenta centavos que el demandado no pagó. En la demanda no se habla de casa alguna.

Se emplazó al demandado. Se celebró el juicio y se practicó el siguiente registro en el libro de sentencias:

Tomo No. 2, página 100, Julio de 1922, dice así: Francisco Matanzo vs. José Hernández, No. ———.—SENTENCIA.—La Corte declara con lugar la demanda y en su consecuencia condena al demandado a desalojar.''

Según la opinión que del caso hemos formado, no es necesario decidir si lo que antecede constituye una sentencia. Aceptando, a los fines de la opinión, que se siguió el procedimiento de desahucio y que se dictó sentencia contra el de-

mandado, opinamos que no pudo ejecutarse en la forma en que lo fué.

Entre las pruebas presentadas por el demandado está la moción del demandante en el pleito de desahucio solicitando que se librara mandamiento de ejecución, y el mandamiento mismo con su diligenciado al pie.

En lo pertinente el mandamiento y en su totalidad el diligenciado, dicen:

"Por cuanto el día 6 de julio de 1922 Francisco Matanzo, como demandante, obtuvo una sentencia a su favor en esta Corte, contra José Hernández, como demandado, por la cual se ordena que usted recobre la posesión de la finca siguiente:

"Porción de terreno radicado en la Sección Norte del barrio de Santurce, compuesto de cinco cuerdas 55 céntimos, apercibido de lanzamiento el demandado si dentro de 15 días no lo desaloja a favor del demandante, con las costas al demandado.

"Por cuanto, el legajo de la sentencia en dicho pleito ha sido archivado en la oficina del Secretario y ese fallo fué registrado en el libro correspondiente, en la fecha mencionada:

"Por tanto, usted, el Márshal antes citado, es requerido por medio del presente para que proceda a la ejecución de dicha sentencia, devolviendo esta orden debidamente diligenciada."

### DILIGENCIAMIENTO DEL MÁRSHAL.

"Yo, Ramón Zeno Córdova, Márshal de la Corte Municipal de San Juan, Sec. 1ª,

"Certifico: Que recibí la presente orden de lanzamiento el día 28 de julio de 1922, y la cual fué debidamente cumplimentada el día 7 de agosto de 1922.

"Con esta misma fecha la devuelvo al Sr. Secretario de esta Corte Municipal de San Juan, Sec. 1ª—San Juan, P. R., Agosto 7, de 1922.—(Fdo.) Ramón Zeno Córdova.—Márshal, Corte Municipal Sec. 1ª "

En la sentencia no se expresa el término en que el lanzamiento debía verificarse, dejando así de cumplirse con lo dispuesto en la sección 16 de la ley de desahucio que prescribe que "la sentencia que declare con lugar la demanda de desahucio ordenará el lanzamiento del demandado dentro

de los términos siguientes, contados desde que dicha sentencia quede firme: Quince días, si se tratare de una casa destinada a habitación o vivienda de familia, veinte días en todos los demás casos.''

En el mandamiento se fija el término de quince días. Del diligenciado aparece que fué ejecutada a los diez días de recibido el mandamiento. ¿Cómo? El márshal se limita en el diligenciado a decir que el 7 de agosto de 1922 cumplió debidamente la orden recibida el 28 de julio anterior. El propio márshal declarando en el juicio aseguró que allá por el mes de agosto de 1922 recibió una orden para el desalojo de una casa y para darle posesión de ella al Dr. Matanzo; que estuvo en la casa; que dió ocho o diez días para desalojarla; que volvió y dió una prórroga, tardando en diligenciar la orden de veinte a veinte y cinco días. Y a la pregunta ''¿Quién destruyó la casa?'' contestó: ''Mandé a mi auxiliar.'' Y el auxiliar, Julio Torres, declaró ''que sus gestiones fueron para la destrucción de una parte de la casa en virtud de orden del márshal. . . . . Al día siguiente cuando fuí a la corte el márshal me preguntó si la había destruído y le dije que sí. . . . . Nunca se vió con Hernández. . . . . Sólo estuvo en la casa el día que la destruyó.''

Sin referirnos a las declaraciones de los testigos de la parte demandante que pudieran parecer exajeradas, por los propios testimonios de los funcionarios de la corte municipal se llega a la conclusión expuesta. La propiedad del demandante, demandado en el pleito de desahucio, fué destruída ilegalmente.

Se pidió el desalojo del demandado; la sentencia lo decretó. La ley marca el camino que debe seguirse. En ninguna parte de ella se habla de destrucción. Aun cuando pudiera comprenderse una casa en el primer apartado de la sección 18 de la Ley de Desahucio, no se cumplió con la ley. Se cometió una arbitrariedad manifiesta.

En el caso *Peña & Balbás* v. *Toro, Márshal,* 34 D.P.R. 137, se resolvió que ''En cumplimiento de un mandamiento

de desahucio el márshal debe desalojar al demandado en su
persona, muebles y enseres, pero en cuanto a bienes el lan-
zamiento sólo comprende la propiedad personal del deman-
dado pero no la adherida al suelo, labores, plantíos o cual-
quiera otra cosa que no se pueda separar de la finca.''

[2] Los errores tres y cuatro pueden estudiarse conjun-
tamente. El 4 se discute muy brevemente. El tres se ar-
gumenta así:

''1. Porque en el contrato de arrendamiento celebrado entre
José Hernández y el Dr. Matanzo, aquél se obligó a desocupar y
dejar a la libre disposición del Dr. Matanzo el solar que ocupado
por su casa y propiedad del Sr. Matanzo; por consiguiente no tiene
derecho a que se le indemnize cantidad alguna; toda vez que él se
obligó a desocupar dicho solar cuando lo requiriese para ello el
Dr. Matanzo.

''2. Porque José Hernández no fabricó en el terreno del Dr.
Matanzo de buena fe sino que se introdujo en dicho terreno sin el
consentimiento del Dr. Matanzo, y cuando éste le requirió para que
levantara la casa que ya había construído, fué que se avino a cele-
brar el contrato de arrendamiento con el Dr. Matanzo, por consi-
guiente José Hernández, no puede ampararse en los preceptos de
los artículos 370, 455 y 456 del Código Civil Vigente y

''3. Porque cuando el Márshal de la Corte Municipal de San
Juan le requirió para que levantara la casa que tenía construída
sobre el solar del Dr. Matanzo dicho José Hernández no le requirió
para que hiciese una tasación o avalúo de la parte de casa que iba
a destruir el Márshal de acuerdo con el mandamiento de ejecución
de sentencia expedida por la Corte Municipal de San Juan, según
lo preceptuado en la Sección 18 de la ley de desahucio que dice
como sigue:

'' 'No será un obstáculo para el lanzamiento el que el colono o
inquilino reclame como suyos labores, plantíos o cualquiera otra
cosa que no se pueda separar de la finca.

'' 'En este caso el Márshal procederá al inmediato lanzamiento,
sin prórroga alguna, y una vez efectuado éste a instancia del inte-
resado procederá a la práctica de un avalúo a costa del reclamante,
previa designación de un perito nombrado por los interesados, de
común acuerdo, y en caso de discordia de tres peritos designados
uno por cada parte y el tercero por el Marshal. Practicado el jus-
tiprecio y recibido por el Márshal el resultado del mismo por es-

crito que firmarán los peritos, los interesados y dicho funcionario, lo ·devolverán a la Corte con la orden de ejecución; quedando al demandado libre el ejercicio de su acción para reclamar ante el Tribunal competente el importe de la cantidad en que se aprecie lo . que creyese corresponderle'.

"No habiéndose acogido el demandante al precepto legal antes transcrito entendemos que renunció su derecho, si alguno tenía, para reclamar el importe de la parte de casa que se le destruyó y que estaba edificada dentro del solar del Dr. Francisco Matanzo. No teniendo derecho a ser indemnizado del valor de la parte de la casa destruída no tiene por consiguiente derecho alguno a cobrar las rentas que pudiera producir dicha casa.

"De que no se probó en el acto del juicio que durante el tiempo transcurrido desde la fecha en que se destruyó la casa hasta el 21 de diciembre de 1922 la referida casa estuviera alquilada."

Hemos transcrito textualmente todo el argumento de la parte apelante a fin de resolver la cuestión de su responsabilidad tal como él mismo la plantea.

Las pruebas demuestran que Hernández edificó su casa en tierras que creyó que pertenecían a Teresa Soriano conviniendo en pagar y pagando a dicha Teresa Soriano cierta suma mensual por alquiler de la tierra; que luego fué advertido por el propio Dr. Matanzo de que la casa quedaba parte en tierras de la Soriano y parte en tierras de Matanzo y convino con éste en pagarle cierto alquiler mensual que no pagó y en dejar a su libre disposición el solar cuando se lo indicara el doctor. Admitiendo que todo eso es cierto ¿está justificada la destrucción de la casa en el pleito de desahucio? En modo alguno. Vivimos bajo el amparo de leyes interpretadas, cuando surge un conflicto, por los tribunales, y aquí la única cuestión que se sometió por Matanzo, al surgir el conflicto entre él y Hernández, a la Corte Municipal, fué la del desahucio de Hernández de un solar que ni siquiera se describió debidamente. No se puede destruir la propiedad de una persona en la forma drástica que se empleó en este caso sin asumir la responsabilidad consiguiente. La corte municipal jamás decretó tal destrucción.

El valor de la casa fijado en la sentencia está sostenido por la prueba. La única cuestión dudosa para nosotros es la del valor del producto. La casa era de madera. Estaba dividida en tres departamentos cada uno de tres habitaciones. El testigo Nicolás Torres declaró que tenía alquilada una habitación en uno de los departamentos pagando cinco dólares al mes, constándole que el resto de la casa estaba alquilado cuando ''la tumbaron''. Hernández, el demandante declaró que la casa le producía veinte y cuatro dólares mensuales viviendo además él en una parte de la misma. Esas declaraciones fueron creídas por la corte que fijó el producto en treinta y cuatro dólares al mes asignando así a la parte ocupada por Hernández diez. Hernández dice que vivía en la parte de atrás de la casa y no fija lo que valdría el alquiler. Sólo encontramos base clara y segura para veinte y cuatro dólares, y siendo ello así, *la sentencia debe modificarse* en tal sentido.

El quinto y último error carece de fundamento sólido. Si bien se destruyó por el márshal sólo una parte de la casa, la prueba demuestra que la otra parte quedó inservible. El Juez sentenciador practicó una inspección. ocular y no hay motivos bastantes para concluir que el juicio que formara en relación con el resto de la prueba sobre este extremo sea erróneo.

———

Procederemos ahora al estudio y resolución del recurso interpuesto por el demandante. El único error que señala, lo razona, en su alegato, así:

''La sentencia condena a los demandados a satisfacer al demandante la cantidad de $800.00 como valor de la casa y la cantidad de $34.00 mensuales desde el 7 de agosto de 1922 hasta el 21 de diciembre del mismo año, o sea la fecha de la interposición de la demanda, como indemnización de los alquileres de dicha casa dejados de percibir.

''El demandante solicitaba no solamente el valor de la casa, si que también sus alquileres desde el 7 de agosto de 1922 hasta el día en .que se pagara el valor de la casa.

"Es indudable que la obligación de pago de los alquileres abarca todo el período de tiempo comprendido desde la privación del inmueble que los produce hasta la devolución del mismo, según así lo determina la ley y lo establece la jurisprudencia consistente de este Honorable Tribunal.

"Por consiguiente, si no puede devolverse el inmueble y en lugar del mismo ha de pagarse su valor, aquellos alquileres han de satisfacerse desde el día en que se privó al reclamante de la posesión del inmueble hasta el día en que se le pague el valor de éste, pues ese pago sustituye a la devolución del inmueble.

"Por consiguiente, la sentencia debe ser admitida en el sentido de imponerse el pago de los $34.00 mensuales no hasta la fecha de la interposición de la demanda, sino hasta el día en que tenga lugar el pago de los $800.00, valor del inmueble."

Como puede verse la parte apelada no cita de modo concreto ningún precepto de ley ni jurisprudencia alguna en apoyo de su criterio. La parte apelada nada contestó. No constan los fundamentos de la corte sentenciadora explicativos de por qué sólo concedió los alquileres hasta la fecha en que se interpuso la demanda. Con situaciones como ésta se confronta con demasiada frecuencia este Tribunal y ello se opone al rápido despacho de los asuntos. Los abogados de ambas partes deben citar concretamente la ley y la jurisprudencia aplicables.

El artículo 1073 del Código Civil revisado, dice:

"La indemnización de daños y perjuicios comprende, no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor, salvo las disposiciones contenidas en los artículos siguientes."

Y esta Corte Suprema en el caso de *Muriente* v. *Terrasa et al.*, 22 D.P.R. 738, 739, aplicando el artículo citado, estableció la siguiente doctrina:

"Conforme al artículo 1073 del Código Civil, la indemnización de daños y perjuicios comprende no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor; pudiendo tomarse como base para calcular la ganancia dejada de obtener, la obtenida anteriormente en un período de tiempo igual, bajo idénticas circunstancias."

El art. 1073 del Código Civil revisado es igual al 1106 del Código Civil antiguo y parece conveniente transcribir los siguientes comentarios de Manresa:

"Consignados en los artículos precedentes el fundamento y orígenes de la indemnización, se ocupa el Código en éstos de precisar en lo que aquélla consiste, determinando luego su alcance según los casos.

"De conformidad con la más evidente justicia y con el sentido del derecho antiguo español y extranjero, declara el primero de estos artículos que la indemnización comprende dos orígenes de perjuicios, las dos formas de daños que pueden causarse: privando a alguien de lo que ya tenía, o impidiéndole aprovecharse de lo que le hubiera correspondido; definición ya antigua, que coincide con la escolástica del *daño emergente* y *lucro cesante*, y que encuentra su base en la doctrina de Paulo, tan sencilla como claramente expuesta en las palabras *mihi abest quantumque lucrari polui*.

"En ambos casos, la realidad del perjuicio y la justicia de la reparación tiene igual evidencia; mas con todo, y cuando se llega a la eficacia práctica del derecho a la indemnización, la distinción indicada, que pudiera parecer sutileza teórica, tiene una importancia innegable, porque traduciéndose en una muy diferente dificultad de apreciación y prueba, y relacionado esto con lo ya expresado, desconfiándose por los tribunales de toda reclamación de daños y perjuicios, hace que el éxito de ésta sea aún más improbable tratándose de los que se suponen causados bajo la segunda de tales formas, o sea privando a alguno de la utilidad que debió obtener.

"Y se comprende fácilmente que así suceda, porque al fin la pérdida sufrida deja siempre algún rastro que acredite la comisión del agravio, y por lo mismo que se trata de una cosa que llegó a existir, cabe determinar en qué consistiera; mientras que en la otra hipótesis, cuando se reclaman ganancias que no se llegaron a obtener, aun cuando haya el mismo fundamento de justicia, aun cuando pueda ser más grande el perjuicio sufrido, hay en éste una fatal concurrencia de los caracteres de futuro, contingente, variable, y, sobre todo, discutible, que contrastan de modo notable con aquellas relativas a seguridad de prueba y facilidad de apreciación.

"La evidente generalidad de estos artículos, aplicables a toda clase de obligaciones y en relación con los preceptos especiales de cada uno de éstos, según se ha reconocido, v. gr., para el arrendamiento (Sentencia del Supremo de 12 de febrero de 1896), y su am-

plitud de expresión, siquiera se contengan restricciones en el 1107 hacen y harán que sean continuamente invocados; pero no logran que dejen de ser restrictivamente interpretados por los tribunales. cuyo criterio, como ya indicamos al comentar otro artículo, tambien amplio y concordante con éstos, el 1101, no deja de ser fundada.

"Como ya entonces expusimos, la jurisprudencia ha continuado después del Código, según era lógico, puesto que éste no supone variación de doctrina, formulando la suya, cuyas bases principales son la necesidad de una prueba robusta, la declaración lógica de que incumbe tal prueba a quien reclame la indemnización, y la firmación también lógica de que la apreciación de aquélla corresponde, como en general sucede, a la sala sentenciadora, con la consiguiente dificultad para la admisión del recurso en que tal apreciación se impone.

"Esas declaraciones, cuya extraordinaria importancia, traspasando el orden procesal, llega a la eficacia de estos preceptos sustantivos, se formulan con repetición en casi todas las resoluciones que de indemnización se ocupan, siendo de notar que precisamente en los artículos que comentamos busca la jurisprudencia el apoyo legal necesario para su criterio de exigencia en cuanto a prueba; y así, en la sentencia de 12 de febrero de 1896, después de invocar estos artículos y expresar su conformidad, dice, ocupándose de los daños y perjuicios a que se refieren: 'daños y perjuicios por tal modo circunscritos, y ganancias frustradas, que deben, por lo tanto, justificarse derechamente por los medios probatorios que la ley autoriza.'

"Conocido el criterio de los tribunales, especialmente el del Supremo, lo que pudiera llamarse 'prudencia forense' aconseja, a más de luchar con el apasionamiento del litigante, llevando la moderación posible a las reclamaciones de daños y perjuicios, poner un exquisito cuidado en la prueba de los mismos; y también, por lo que toca a su cuantía, preferir dejarla al resultado de aquélla más bien que determinar una cantidad fija en la demanda, que puede conducir, por cualquier deficiencia de los medios probatorios, a la absolución del demandado." 8 Manresa. Comentarios al Código Civil, páginas 97, 98 y 99.

¿Existe aquí la prueba robusta, la base firme, que la jurisprudencia exije?

Al resolver el recurso interpuesto por el demandado dijimos que tal prueba y tal base existían en cuanto a la suma

de veinte y cuatro dólares mensuales. La cuestión ahora es resolver si la ganancia dejada de obtener sólo llega a la fecha en que se interpuso la demanda, como decidió la corte sentenciadora, o se extiende a aquélla en que el deudor satisfaga al acreedor el precio de la casa.

Creemos que existe la misma razón para el segundo período que para el primero. Tal como fué planteado y aceptado el debate se ha considerado al demandado responsable de la destrucción de la casa. La casa no puede devolverse y en sustitución de ella se ha ordenado la devolución de su valor, ochocientos dólares. Si la casa hubiera permanecido como estaba antes de su destrucción, lo lógico es que hubiera continuado produciendo igual renta. Hasta que el demandante reciba el valor de la casa, la ganancia dejada de obtener es los alquileres que hubiera percibido.

No se ha levantado la cuestión de los gastos. A este respecto quizá sea oportuno recordar que el demandante habitaba una parte de la casa y que tal beneficio fué eliminado —por impreciso—por nosotros. Una cosa podría compensar la otra y así la suma de veinte y cuatro dólares resulta equitativa.

A virtud de todo lo expuesto *debe modificarse la sentencia apelada* eliminando de ella lo que sigue: "hasta el 21 de diciembre, 1922, fecha de la interposición de la demanda, a razón de $34.00 mensuales" y sustituyéndole por lo que sigue: "hasta el día en que se satisfaga esta sentencia, a razón de $24.00 mensuales." *Y así modificada, confirmarse.*

El Juez Asociado Sr. Wolf no intervino en la resolución de este caso.